## SHAW & TRUESDELL CO. v. UNITED STATES.

### No. 5406.

District Court, E. D. New York.

Nov. 21, 1932.

Donald Horne, of New York City, for plaintiff.

Howard W. Ameli, U. S. Atty., of Brooklyn, N. Y. (A. D. Smith, Asst. U. S. Atty., of Brooklyn, N. Y., C. M. Charest, Gen. Counsel, Bureau of Internal Revenue, of Washington, D. C., and Elmer T. Kemper, Sp. Atty., Bureau of Internal Revenue, of Washington, D. C., of counsel), for the United States.

GALSTON, District Judge.

This suit is brought pursuant to title 28, U. S. Code, § 41 (20), 28 USCA § 41 (20), Judicial Code, § 24 (20), as amended.

The plaintiff, a taxpayer, seeks to have an offer of compromise in the amount of $13,803.21, which was submitted on or about May 28, 1926, and duly accepted by the Commissioner of Internal Revenue, set aside, as made under duress, and therefore illegal and void; to recover the said sum of $13,803.-21, with interest thereon from May 28, 1926; and to recover from the defendant the sum of $19,148.04, with interest thereon from December 13th, 1924. At the trial plaintiff withdrew such part of the prayer of the complaint as seeks to recover the sum of $19,-148.04, with interest.

It is alleged that the plaintiff filed its income and profits tax return for the fiscal year ended June 30, 1917, and paid the taxes thereon; that thereafter the Commissioner of Internal Revenue assessed additional income and profits taxes for that fiscal year in the sum of $15,686.82, together with a penalty in the sum of $16,931.52 for the making of a false and fraudulent return. On April 23, 1923, the plaintiff paid the additional taxes in the sum of $15,686.82.

A similar situation arose with respect to the filing of its income and profits tax return for the fiscal year ended June 30, 1918. The Commissioner of Internal Revenue assessed additional income and profits taxes for that year in the sum of $22,190.69, and a penalty assessment of $11,095.35 also, for the alleged making of a false and fraudulent return. The additional taxes of $22,190.69 so assessed was paid in two installments: on April 23, 1923, $3,042.65; on December 13, 1924, $19,148.04.

It is alleged that neither of these income and profits tax returns was fraudulently made or filed, but that the returns contained errors which were unknown to the plaintiff's officers when the returns were filed.

It is alleged that on or about May 28, 1926, the plaintiff was advised by the collector of internal revenue for the First district of New York that, unless the penalties were paid, he would distrain and seize the plaintiff's business to collect the same; and, by virtue of such notice and acting under compulsion and duress to protect the alleged illegal distraint and seizure, and after protesting and explaining to the Commissioner of Internal Revenue that no errors

were made by the plaintiff with fraudulent intent, the plaintiff, on or about May 28, 1926, filed with the collector of internal revenue an offer of compromise of these penalties in the amount of $13,803.21, which the plaintiff tendered at the same time to the said collector in full settlement.

The answer sets up the offer of compromise as a full and complete settlement of the penalties assessed, and denies that there was any duress asserted in obtaining the offer of compromise.

There are important questions presented by the defendant. Among them are these:

(1) Does the evidence introduced at the trial establish that the plaintiff submitted the offer of compromise under duress or as a result of illegal and unlawful coercion on the part of the defendant?

(2) Has this court jurisdiction of a suit in equity against the United States to set aside and cancel a contract in the form of an offer in compromise and acceptance thereof wherein the amount involved exceeds $10,000; the collector of internal revenue being out of office at the time the proceeding was commenced?

(3) Has this court jurisdiction of a suit in equity brought against the United States as defendant to cancel and set aside an offer of compromise which was duly accepted in accordance with the provisions of the Revised Statutes, § 3229 (U. S. Code, title 26, § 158 [26 USCA § 158]) on the ground of duress?

The view which I take of the first question makes unnecessary the consideration of the second and third.

The only evidence on which the plaintiff relies to show duress, in addition to the notice of distraint from the collector of internal revenue, is consultation which the plaintiff's president had with the collector of internal revenue about the penalties. But he was unable to fix the date of these consultations, and, unless the notice of distraint can be interpreted as duress, plaintiff's case absolutely falls.

After the additional assessments and the penalties had been assessed, the plaintiff, on or about May 27, 1924, submitted an offer in compromise of $500, accompanied with a full explanation of the errors, unknown to the plaintiff's officers, which had been made in preparing the original returns for the fiscal years 1917 and 1918. This offer was rejected; and a second notice and demand for tax was served upon the plaintiff, requiring the taxpayer to make the payments on or before June 6, 1924. The notice contained the usual printed notice "To avoid seizure and sale of property this tax must be paid to the Collector of Internal Revenue within ten days from the date stated above." This second notice was received before the Commissioner of Internal Revenue, on August 20, 1924, had rejected the offer in compromise of $500. On December 3, 1924, the plaintiff submitted a second offer in compromise raising its first offer by the amount of $777.36, and again accompanied the offer with an explanation of the innocent errors committed in the preparation and filing of the original returns. This offer was rejected by the Commissioner of Internal Revenue on January 15, 1925. Thereafter, on May 28, 1926, a third offer in compromise, which is the subject-matter of this suit, of $13,803.21, was submitted in settlement of the penalty assessments totaling $28,026.87. On or about March 5, 1928, almost two years thereafter, that offer in compromise was accepted with the advice and consent of the Secretary of the Treasury. During the intervening years, plaintiff never demanded a cancellation of the offer or a return of the money submitted with the offer in compromise, until the institution of this suit on February 28, 1931.

There is no evidence in the case of actual duress. The most that the plaintiff can contend is that the notice of distraint constituted constructive duress. If such constructive duress existed, it certainly persisted a long time, for it began in 1924. The plaintiff apparently was not harassed, for in a most leisurely way it submitted during the period from 1924 to 1926 two offers before the final offer in 1926. In such circumstances, certainly no actual duress can be spelled out of the situation.

Nor do the authorities indicate that there was any legal duress. In Burnet v. Chicago Railway Equipment Company, 282 U. S. 295, 51 S. Ct. 137, 140, 75 L. Ed. 349, the court said:

"The taxpayer contends that the waiver was inoperative because secured by duress. The argument is that while the Commissioner in December, 1925, might have made a jeopardy assessment and have enforced collection, such action would have been illegal because the statutory period had then expired, and that a waiver procured by such a threat is ineffective. Whether or not the Commissioner would have been liable to the taxpayer for a collection made as the result of a jeopardy assessment in 1925, we

need not determine. He clearly had the power to make such assessment and thereby compel the filing of a claim for abatement and the giving of a bond, or, if such claim and accompanying bond were not filed, to make collection and relegate respondent to an action at law. In the absence of a determination that this deficiency was barred, it was the Commissioner's duty to proceed to insure the assessment and collection of the tax. At his suggestion, the taxpayer executed the waiver. Thereby it was enabled to have all questions concerning the alleged deficiency considered by the Board. A waiver given under such circumstances is not invalid. This contention, which seems to have been raised for the first time in this Court, is also unsound."

Certainly it cannot be duress for an officer of the government to threaten to do that which the law authorizes and indeed requires him to do; and I agree with the United States Board of Tax Appeals in what was said by that Board in Mulford v. Commissioner, 25 B. T. A. 238, at page 243:

"It is not duress on the part of the Commissioner to give the taxpayer notice that he is going to use the lawful means provided by the statute to assess and collect the tax. Burnet v. Chicago Railway Equipment Co., 282 U. S. 295 [51 S. Ct. 137, 75 L. Ed. 349]."

My view at the trial was that the proper procedure for the plaintiff was to pay the tax and bring an action for a recovery. That seems to have been indicated in the unreported opinion of the United States District Court for the Northern District of Ohio in the case of The Simmons Manufacturing Company v. Routzahn,[1] in which it was said:

"Plaintiff by reply denies acknowledging or promising to pay the debt and challenges the validity of the bond as given under duress and threat of seizure of its property and without consideration. And further alleges, in substance, that payment was made not under the bond but of the taxes and was extorted by threats of distraint. On April 20, 1925, when the bond was given collection of the taxes by suit or distraint was barred. * * * There may be a question whether the moral obligation to pay the outlawed claim was sufficient to raise an implied promise to pay the tax in the absence of some recognition by plaintiff of a subsisting liability. However that may be the bond averted an immediate seizure of its property and this was sufficient consideration. * * *

[1] Not for publication.

Further the court regards this bond as a waiver and as such effective even though executed after the statute had barred collection. See Stange v. United States, 282 U. S. 270, 51 S. Ct. 145, 75 L. Ed. 335. 'An effective and not a futile act was intended.' Id., 282 U. S. 277, 51 S. Ct. 145, 75 L. Ed. 335, and it is not shown to have been procured by duress. The stipulation is that when a few days prior to April 20, 1925, the deputies called to collect the tax the plaintiff's general manager promised to furnish a bond as soon as possible, whereupon they refrained from seizing the plaintiff's property, and the bond was given as promised, the plaintiff contending that no tax was due. * * *

"In Burnet v. Chicago Ry. Equipment Company, 282 U. S. 295, 303, 51 S. Ct. 137, 75 L. Ed. 349, it is said that in the absence of a determination that a deficiency was barred, it was the Commissioner's duty to proceed to insure the assessment and collection of the tax, and that a waiver which enabled the Board to consider the matter, was not invalid, even though enforced collection of the taxes would have been illegal because of the statute of limitations.

"When the bond in this case was given it was the general belief that collection by distraint was not barred for the Bowers Case has not been decided. And if it was, then the Collector's duty to insure collection and he had the right to take the security and did so under no greater show of force and under circumstances no more onerous to the taxpayer than appeared here, I do not think it should be held that he illegally extorted the bond. The plaintiff could have paid the tax and as is now understood, could have recovered back. Instead it chose to give the bond and must abide the consequences."

There is no suggestion that the offer in compromise and the statement accompanying it were made under mistake, and indeed that is not either the theory of the complaint or of the proof. The plaintiff elected to base its case solely on duress. There is every reason to believe from the proofs that what the plaintiff did and now seeks to have set aside was done voluntarily.

Nor is pressure of financial difficulties sufficient to spell out duress. As was said in United States v. Child & Co., 12 Wall. 232, 244, 20 L. Ed. 360:

"We can hardly conceive of a definition of duress that would bring this case within its terms. Authorities are cited to show that

where, under peculiar circumstances, property is withheld from the owner and he is forced to pay some unjust demand to obtain possession of it, he can afterwards maintain a suit for the money so paid. But no case can be found, we apprehend, where a party who, without force or intimidation and with a full knowledge of all the facts of the case, accepts on account of an unliquidated and controverted demand, a sum less than what he claims and believes to be due him, and agrees to accept that sum in full satisfaction, has been permitted to avoid his act on the ground that this is duress. If the principle contended for here be sound, no party can safely pay by way of compromise any sum less than what is claimed of him, for the compromise will be void as obtained by duress. The common and generally praiseworthy procedure by which business men every day sacrifice part of claims which they believe to be just to secure payment of the remainder would always be duress, and the compromise void."

The complaint is dismissed.

If this opinion is not in sufficient compliance with the rule requiring findings of fact and conclusions of law, submit findings of fact and conclusions of law in accordance therewith.