## DUNCAN v. UNITED STATES.

### No. 1973.

District Court, W. D. Kentucky.

June 7, 1941.

Selligman, Goldsmith, Everhart & Greenebaum, by Joseph Selligman, all of Louisville, Ky., for plaintiff.

Eli H. Brown, III, U. S. Atty., of Louisville, Ky., Samuel O. Clark, Jr., Asst. Atty. Gen., and Andrew D. Sharpe and Lyle M. Turner, Sp. Assts. to Atty. Gen., for the United States.

SWINFORD, District Judge.

The facts in this case are somewhat involved but a recitation of them in more or less detail is important to a proper understanding of the conclusions I have reached.

The taxpayer filed an income tax return for the taxable year of 1929. It was thereafter determined by the Commissioner of Internal Revenue that a deficiency tax was due. No appeal was taken by the taxpayer from this decision and in August, 1931, the deficiency in the amount of $4,064 was assessed.

The deficiency assessment arose by reason of the fact that the taxpayer was the owner of certain shares of stock in a utility holding company. In 1929 the holding company gave to its stockholders for each share of its stock which they owned the right to buy at a fixed price per share a certain number of shares in one of its subsidiary corporations. Noting that the taxpayer had received these rights, the Treasury Department in June, 1931, advised him that it represented taxable income.

On January 9, 1932, and March 21, 1932, payments of $500 each were made on the tax liability.

On April 3, 1933, a claim for refund was filed and on September 4, 1934, disallowed by the Commissioner.

On April 30, 1935, the Board of Tax Appeals, in the case of Palmer v. Commissioner, 32 B. T. A. 550, held that the rights on which the taxpayer in the instant case was held liable and on which the deficiency assessment was made were not taxable. This, of course, was in a different case but the identical question was decided.

Thereafter the taxpayer continued to make payments under protest, and in the light of the decision in the Palmer case on

June 5, 1936, filed suit to recover the original payments of $500 each made in January and March of 1932.

On February 2, 1937, the Circuit Court of Appeals reversed the decision in Palmer v. Commissioner, supra, and held that the stock rights were income. 1 Cir., 88 F.2d 559.

On March 18, 1937, the taxpayer submitted an offer in compromise and on the following June 7, made another offer and also agreed to dismiss the suit then pending in this court.

The offer in compromise was accepted as of June 29, and the taxpayer was so notified on July 2, 1937.

The acceptance of the offer in compromise was not made with the advice and consent of the Secretary of the Treasury or any Undersecretary of the Treasury. The taxpayer under the terms of the compromise made a number of payments and the United States abated the unpaid balance by letter dated March 16, 1938.

On November 8, 1937, the Supreme Court in Palmer v. Commissioner, 302 U.S. 63, 58 S.Ct. 67, 82 L.Ed. 50, reversed the Circuit Court of Appeals and held that the stock rights were not taxable income. The taxpayer objected to the entry dismissing this case with prejudice in which he was sustained by an order of date, May 25, 1938.

The taxpayer filed claims for refund of the amounts paid under the compromise and the refund was disallowed by reason of the compromise agreement. It is now urged that the compromise was entered into by the taxpayer under duress and should be set aside.

In the brief for the Government, counsel makes the following statement of the issue to be determined here: "The sole question in dispute before this Court is whether the taxpayer's suit, together with the Government's counterclaim, should be dismissed with prejudice by reason of the terms of a compromise wherein the parties agreed that the same should be done."

It appears that this question was passed upon by the Honorable Elwood Hamilton, while presiding Judge of this Court, in the order of May 25, 1938.

The record discloses that the following joint motion was made:

"By agreement of parties, and on their joint motion, this action and the counterclaim of the defendant herein may be dismissed settled as to both parties and with prejudice to the right of either hereafter to make further claim on the accounts and matters presented by the plaintiff's action herein and by the defendant's counterclaim.

"(Signed)    Selligman, Goldsmith, Everhart and Greenebaum
"Joseph Selligman
"Attorneys for Plaintiff
"Eli H. Brown, III
"Attorney for Defendant."

When the motion was offered by the United States an objection was made by the plaintiff on the ground that it was "obtained" by the defendant from the plaintiff by "extreme duress". The objection is in words and figures as follows:

"Comes the plaintiff, Stuart E. Duncan, by Selligman, Goldsmith, Everhart and Greenebaum, his attorneys, and formally withdraws his consent and agreement that this action may be dismissed settled with prejudice to the right of the parties hereto to make any further claim on the accounts or matters presented by plaintiff's action herein and by defendant's counter-claim, and objects to the entry of such a motion to dismiss this action. In support hereof the plaintiff files his affidavit showing that the compromise agreement made between the plaintiff and the defendant, by which the defendant has heretofore obtained the consent of this plaintiff to the entry of an order of dismissal of the kind aforementioned, was obtained from this plaintiff by extreme duress as to the plaintiff's property and legal rights and under mistake of law.

"(Signed)    Joseph Selligman
"Selligman, Goldsmith, Everhart and Greenebaum
"Attorneys for Plaintiff"

Thereupon Judge Hamilton entered the order of May 25, 1938, which I quote in full:

"At a Court Held at Louisville on This 25th Day of May, 1938:

"This action having come on to be heard upon the motion of the defendant tendered herein on April 16, 1938, to enter as an agreed order a motion to dismiss this action settled as to both parties and with prejudice to the right of either hereafter to make any further claim on the accounts and matters presented by the plaintiff's action herein and by the defendant's counterclaim, and the plaintiff having filed its written objection to the entry of such order to dismiss,

said objection of the plaintiff is sustained and the motion of the defendant, United States of America, to enter the aforementioned order of dismissal is overruled, to which ruling said defendant objects and is granted an exception.

"(Signed)   Elwood Hamilton
"Judge
"Sitting by designation.

"Have Seen:
"(Signed)   Selligman, Goldsmith, Everhart and Greenebaum
"*Attorneys for Plaintiff.*
"(Signed)   Eli H. Brown, III
"*Attorney for Defendant.*"

In the light of this record it is very doubtful that this court, a court of concurrent jurisdiction, has authority to proceed to determine what appears to be the identical question passed upon by Judge Hamilton in the order of May 25, 1938. Baltimore Trust Company v. Norton Coal Mining Company, D.C., 25 F.Supp. 968; Cherry et al. v. Howell, et al., 2 Cir., 66 F.2d 713. Nevertheless, this case proceeded to trial and the taxpayer offered proof in support of the plea of duress.

By the decision of the Supreme Court in Palmer v. Commissioner, supra, the tax which the plaintiff here seeks to recover was not a proper tax and should not have been charged against the taxpayer. The Government, however, stands on the compromise agreement under which the payment was made and which both parties were bound to believe was a correct assessment at the time the compromise was entered into. The plaintiff's testimony on the question of duress is confined largely to his own account of his worry and harassment during the years of the depression. He was the president of a large and successful corporation and was a business man of ability and experience. The depression produced worries and annoyances to practically all business men and men and women of affairs. The plaintiff here was no exception.

He was continually called upon by representatives of the office of the Collector of Internal Revenue at Louisville who did nothing more than discharge the duties for which they were responsible by reason of the nature of their employment. No threats of violence to either person or property were made. Nothing was done except advise the taxpayer of the rights which he had and the procedure the Government could take to enforce collection of the tax.

Certain distraint warrants were issued but there was nothing unusual or unfair about this legal method of collecting what was believed by both to be a just and lawful debt. No unfair advantage was ever taken by any representative of the Government and the taxpayer was at all times treated with the utmost deference and respect. His testimony offered to establish the allegation of duress is entirely unimpressive and on the contrary is of such a nature that convinces the trial court that it was an after-thought produced by the decision of the Supreme Court in Palmer v. Commissioner.

■ Courts should certainly be slow to hold that collecting agencies of the Government, in the absence of direct and positive proof, have overstepped the bounds of propriety in performing the duties, often unpleasant, of collecting the revenue. Tax gatherers have long been relegated to an unenviable place in the eyes of those with whom they are required to deal.

■ The contention of coercion and duress is entirely without merit and the evidence, both from the typewritten transcript and from the demeanor of the witnesses at the time the proof was heard, wholly and hopelessly fails to establish any such action on the part of the Government and its agencies.

I have examined with interest the authorities offered both by the plaintiff and the defendant but such authorities are of little value in determining a question which in its final analysis must rest upon the facts in the particular case.

Neither is the second point of the plaintiff well taken. It was clearly the intention of Congress to grant to the President authority to co-ordinate the various branches of the executive department of the Government.

■ By investigation it was determined, and properly so, that the Department of Justice should have the right to compromise cases which it was charged to institute or defend. The propriety of granting this authority can not be seriously criticised. This is what the Congress recognized when it granted to the Chief Executive the powers enunciated in the Act of June 30, 1932, as amended by the Act of March 3, 1933. It was the thing the Chief Executive had in mind when he promulgated the order of June 10, 1933. [See note 5 U.S.C.A. § 124–134]

Any other conclusion would seem to defeat the whole purpose of the legislation.

The authority of Botany Worsted Mills v. United States, 278 U.S. 282, 49 S.Ct. 129, 73 L.Ed. 379, and cases following that decision, cannot be disputed but I do not believe they are authority since the executive order transferring the authority from the Treasury Department to the Department of Justice. The procedure to be followed by the Justice Department is, in my judgment, unimportant since the reasons for the compromise which were contemplated by the provision for a formal opinion from the Solicitor of the Treasury Department are removed.

Too much emphasis cannot be placed upon safeguarding the revenue and all actions and compromises dealing with it, but it seems strange that the Justice Department charged with the responsibility of instituting and defending revenue cases should be distrusted in determining whether from a legal standpoint the client's interests would best be served by compromise.

In my opinion the plaintiff's petition should be dismissed.

Proper findings of fact, conclusions of law and judgment, in accordance with this memorandum, should be submitted.