DAVID KRUEGER, TRANSFEREE, ESTATE OF WILLIAM KRUEGER, DECEASED; ESTATE OF ANNA KRUEGER, DECEASED, PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

HENRY KRUEGER, PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket Nos. 2656–64, 2686–64.   Filed September 14, 1967.

David Krueger, pro se, in docket No. 2656–64.
*Thomas F. Roche,* for the petitioner in docket No. 2686–64.
*Nelson E. Shafer,* for the respondent.

SIMPSON, *Judge:* In prior proceedings before this Court,[1] stipulated decisions regarding the tax liabilities for the taxable years 1950 through 1957 of the Estate of William Krueger, deceased, and the Estate of Anna Krueger, deceased, were entered. These decisions, together with an uncontested assessment of income taxes against the Estate of Anna Krueger for the taxable years 1958 through 1960, resulted in total income tax assessments against the two estates of $709,225.42. Thereafter, the respondent determined that petitioner David Krueger was liable as transferee of the above two estates in the amount of $307,710.51 and that petitioner Henry Krueger was liable as fiduciary and transferee of both estates for the total amount of the income tax assessments, $709,225.42.

The respondent, on March 31, 1966, filed a motion, which we granted, to sever the issues in the dockets involved here, and the purpose of this particular proceeding is to determine the validity and effect of the stipulated decisions entered by this Court in the transferors' cases. The issues here considered are: (1) Whether the stipulated decisions entered by the Tax Court in the proceedings determining the liability of the transferor estates are binding, under the principles of res judicata or equitable estoppel, upon the petitioners David Krue-

---

[1] Docket Nos. 70052, 73756, 82471, 94703, 93841, and 93842.

ger and Henry Krueger as transferees of the assets of such estates,[2] and (2) whether petitioner Henry Krueger, who, while executor and administrator of the transferor estates, filed notice of fiduciary relationship with the respondent but upon termination of such fiduciary relationship under State law did not file notice that such termination had occurred, had authority to bind the transferor estates by entering into stipulated decisions after his fiduciary relationship had terminated.

## FINDINGS OF FACT

Some of the facts were stipulated, and those facts are so found.

Petitioners David Krueger (David) and Henry Krueger (Henry) are individuals residing in Chicago, Ill., at the time their petitions were filed. By separate notices of liability dated March 20, 1964, the respondent determined that the petitioners were liable as transferees of the assets of the Estate of William Krueger and the Estate of Anna Krueger for certain deficiencies and penalties in tax previously assessed against such estates. The respondent determined that Henry was also liable as a fiduciary of such estates.

William Krueger died intestate in Chicago, Ill., on February 19, 1957. His widow, Anna Krueger, was appointed and acted as administratrix of his estate from September 12, 1957, until her death on July 23, 1960. Thereafter, on September 15, 1960, Henry was appointed administrator de bonis non of the Estate of William Krueger. On September 22, 1960, without notice to respondent, Henry filed a final report in lieu of a final account in the Estate of William Krueger. Without notice to respondent, such report was approved, and Henry was discharged as administrator de bonis non by an order dated September 22, 1960.

On July 26, 1960, Henry was appointed administrator for the Estate of Anna Krueger. On August 1, 1960, the last will of Anna Krueger was admitted to probate, and Henry was thereupon appointed executor of the Estate of Anna Krueger. On September 17, 1962, without notice to respondent, Henry filed a final account in the Estate of Anna Krueger, the final account was approved, and Henry was discharged as executor. On February 13, 1963, Henry filed a petition to reopen the Estate of Anna Krueger, and on that date, Henry's prior discharge was vacated and his letters testamentary reinstated. On March 18, 1966, without notice to respondent, David filed a petition in the Estate of Anna Krueger to set aside the Probate Court's order of February 13, 1963, reopening the estate, and the relief sought was granted on that date after an uncontested hearing. David, along with

[2] Although the respondent has asserted liability against Henry as a fiduciary, we are concerned in this proceeding only with the effect of the stipulated decisions upon his liability as transferee of the assets of the estates.

others, has acted as attorney for Henry in his position as administrator and executor of the Estate of Anna Krueger.

Henry filed notices of fiduciary relationship (Form 56), to which were attached appropriate copies of letters of administration or letters testamentary, with the district director of internal revenue, Chicago, Ill., as follows:

| Date | Description |
|---|---|
| Jan. 31, 1961 | William Krueger, deceased—income tax (1956–57) |
| Jan. 31, 1961 | Anne E. Krueger, deceased—income tax (1956–57) |
| Mar. 15, 1962 | Anna E. Krueger, deceased—income tax (1958) |
| Mar. 15, 1963 | Anna E. Krueger, deceased—income tax (1958–60) |

Henry has furnished no notice advising the district director of internal revenue that his fiduciary relationship is or was terminated.

The prior proceedings before this Court involved the estate tax on the Estate of William Krueger (docket No. 93842), Anna Krueger's liability as transferee of the assets of the Estate of William Krueger (docket No. 93841), and the joint income tax liabilities of William and Anna Krueger for the taxable years 1950 through 1957 (docket Nos. 70052, 73756, 82471, and 94703). Stipulated decisions in all of these proceedings were approved by Henry, as decedents' personal representative, and entered on October 24 and October 26, 1962.

As a consequence of these stipulated decisions, tax assessments were made with respect to the joint or several liabilities of William Krueger, deceased, and Anna Krueger, deceased, in the total amount of $471,508.03 with additions to the tax[3] in the total amount of $172,031.88.

On June 11, 1964, a notice of deficiency was mailed to "Estate of Anna Krueger, Deceased, Henry Krueger, Executor," regarding the decedent's income tax liability for the taxable years 1958, 1959, and 1960. No petition was filed with the Tax Court in response to this notice, and the total tax assessed for these years was $88,204.96 with additions to the tax in the total amount of $4,410.23. None of these assessments, or interest thereon as provided by law, has been paid in full or in part.

On March 11, 1957, Henry was indicted for tax evasion in the U.S. District Court, Northern District of Illinois, Eastern Division, on five counts, four of which charged violation of section 145(b), I.R.C. 1939, and one that charged violation of section 7201, I.R.C. 1954,[4] covering each of the years 1950 through 1954. About February 5, 1959, Henry was adjudged guilty, on a plea of nolo contendere, on each of the five counts. About April 16, 1959, he was sentenced to pay a fine and

---

[3] Under secs. 293 and 294, I.R.C. 1939, and secs. 6653 and 6654, I.R.C. 1954.

[4] All statutory references are to the Internal Revenue Code of 1954 unless otherwise indicated.

costs, and was placed on probation for 1 year on condition that he pay all taxes found to be legally due. The probation period was subsequently extended to October 16, 1963.

OPINION

The basic issue in this case is whether the doctrine of res judicata applies to stipulated decisions entered by this Court. The respondent asserts that as transferees of the estates of William and Anna Krueger, David and Henry are liable for the deficiencies in income tax of those estates as determined by the stipulated decisions of this Court. However, David and Henry contend that since those decisions were not based upon the merits of the controversies, res judicata does not apply to such decisions and does not prevent a reconsideration of the tax liability of the estates on the merits.

The petitioners call our attention to three early decisions by this Court which they believe support their position. *F. L. Bateman*, 34 B.T.A. 351 (1936); *Keener Oil & Gas Co.*, 32 B.T.A. 186 (1935); *Wayne Body Corporation*, 22 B.T.A. 401 (1931), modified 22 B.T.A. 1207 (1931), further modified 24 B.T.A. 524 (1931).[5] The *Wayne Body Corporation* case involved an assertion of transferee liability against the petitioner. The respondent had asserted a deficiency against the transferor, and although the transferor petitioned this Court for a redetermination of the deficiency, the parties later agreed that such petition should be dismissed. In the *Wayne Body Corporation* case, this Court held that since the alleged liability of the transferor had not been determined on the merits, the transferee was not barred from contesting the liability of the transferor. The *Keener Oil & Gas Co.* case involved similar facts and a similar holding. However, *F. L. Bateman* concerned a different issue. In that case, the respondent claimed that the petitioner was liable for tax as a shareholder of a personal service corporation. Previously, the respondent had asserted a deficiency against the corporation, but the corporation claimed that it was not liable because it was a personal service corporation. The parties agreed upon a settlement on the basis that the corporation was a personal service corporation, and a stipulated decision was entered by this Court. In the *Bateman* case, the respondent contended that the petitioner was estopped from questioning the validity of the stipulated decision or from repudiating its effect on his personal income tax liability. Thus, *Bateman* concerned a request to apply collateral estoppel, not res judicata, and the Court properly rejected this request.

To judge the merits of the petitioners' contentions in this case, it is first necessary to understand the doctrines of res judicata and col-

[5] For a contemporaneous criticism of these cases, see Griswold, "Res Judicata in Federal Tax Cases," 46 Yale L. J. 1320, 1349–1350 (1937).

lateral estoppel and to distinguish between them. In *Commissioner* v. *Sunnen*, 333 U.S. 591 (1948), the Supreme Court considered both doctrines and provided us with definitions of them. The Court said:

The general rule of *res judicata* applies to repetitious suits involving the same cause of action. It rests upon considerations of economy of judicial time and public policy favoring the establishment of certainty in legal relations. The rule provides that when a court of competent jurisdiction has entered a final judgment on the merits of a cause of action, the parties to the suit and their privies are thereafter bound "not only as to every matter which was offered and received to sustain or defeat the claim or demand, but as to any other admissible matter which might have been offered for that purpose." *Cromwell* v. *County of Sac*, 94 U.S. 351, 352. The judgment puts and end to the cause of action, which cannot again be brought into litigation between the parties upon any ground whatever, absent fraud or some other factor invalidating the judgment. See Von Moschzisker, "Res Judicata," 38 Yale L. J. 299; Restatement of the Law of Judgments, §§ 47, 48.

But where the second action between the same parties is upon a different cause or demand, the principle of *res judicata* is applied much more narrowly. In this situation, the judgment in the prior action operates as an estoppel, not as to matters which might have been litigated and determined, but "only as to those matters in issue or points controverted, upon the determination of which the finding or verdict was rendered." *Cromwell* v. *County of Sac, supra*, 353. And see *Russell* v. *Place*, 94 U.S. 606; *Southern Pacific R. Co.* v. *United States*, 168 U.S. 1, 48; *Mercoid Corp.* v *Mid-Continent Co.*, 320 U.S. 661, 671. Since the cause of action involved in the second proceeding is not swallowed by the judgment in the prior suit, the parties are free to litigate points which were not at issue in the first proceeding, even though such points might have been tendered and decided at that time. But matters which were actually litigated and determined in the first proceeding cannot later be relitigated. Once a party has fought out a matter in litigation with the other party, he cannot later renew that duel. In this sense, *res judicata* is usually and more accurately referred to as estoppel by judgment, or collateral estoppel. See Restatement of the Law of Judgments, §§ 68, 69, 70; Scott, "Collateral Estoppel by Judgment," 56 Harv. L. Rev. 1. [333 U.S. at 597]

In 1953, the Supreme Court applied these rules in a case in which the earlier decision was based upon a stipulation. *United States* v. *International Building Co.*, 345 U.S. 502 (1953). The Commissioner of Internal Revenue sent the taxpayer a notice of deficiency for the years 1933, 1938, and 1939 on the basis that the taxpayer had claimed excessive depreciation for those years. The taxpayer filed a petition with the Tax Court, but the case was never heard; instead, the parties agreed to a stipulated decision. Later, the Commissioner sent the taxpayer another notice of deficiency on the basis that the taxpayer was claiming excessive depreciation for 1942. The taxpayer contended that the earlier stipulated decision by the Tax Court prevented the Commissioner from raising the issue of depreciation. The Court held that since the two controversies involved different taxable years, and since there had not been any adjudication on the merits of the issue of de-

preciation, collateral estoppel did not apply. However, the Court added:

Certainly the judgments entered are *res judicata* of the tax claims for the years 1933, 1938 and 1939, whether or not the basis of the agreements on which they rest reached the merits. * * * [345 U.S. at 506]

This statement by the Supreme Court has been followed in four cases since that time. In *Lenny* v. *Williams*, 143 F. Supp. 29 (N.D. Ohio 1956), there was a stipulated decision entered by this Court, but the Commissioner of Internal Revenue thereafter claimed an additional deficiency for the same taxable year. The District Court held that res judicata applied to the stipulated decision and enjoined the Commissioner from attempting to claim any additional deficiency for that year. In *United States* v. *Capone*, 178 F. Supp. 320 (N.D. Ill. 1959), a taxpayer against whom the Commissioner of Internal Revenue brought an action to collect taxes which had been determined by a stipulated decision of this Court sought to reopen the controversy as to whether the taxes were due, but the District Court held that res judicata applied to the stipulated decision so that the taxpayer could not litigate the merits of the liability in the collection action. In *Maher* v. *United States*, 172 F. Supp. 689 (Ct. Cl. 1959), the Court of Claims was asked by the Congress whether a taxpayer whose tax liability had been determined by a stipulated decision of this Court had any legal or equitable right to have the merits of such liability reconsidered, and the court held that there was no legal or equitable right to a reconsideration of the tax liability because res judicata applied to the stipulated decision. In *Erickson* v. *United States*, 309 F. 2d 760 (Ct. Cl. 1962), a taxpayer brought a refund action to seek reconsideration of a settlement which he had previously made and which was reflected in a stipulated decision, and the Court of Claims held that the taxpayer was estopped by his earlier agreement.

These cases illustrate well the reasons for applying res judicata to any decision whether or not the decision is based upon the merits. If res judicata is not applied, either party may become dissatisfied with his agreement or with a decision and seek reconsideration of it. In addition, if not prevented by res judicata, the parties may prolong the controversy indefinitely—at each step in the collection procedure, the battle could be fought again and resourceful counsel could find many forums in which to fight. To assure both parties that the controversy will be terminated after a reasonable opportunity for a trial, res judicata must be applied when a decision is entered either because the parties have had their day in court with an opportunity to raise all pertinent issues or because the parties have agreed to waive that opportunity.

The fact that a transferee is raising the issue in the case before us makes no difference. In *Egan's Estate* v. *Commissioner*, 260 F. 2d 779

(C. A. 8, 1958), affirming 28 T.C. 998 (1957) ; *First Nat. Bank* v. *Commissioner*, 112 F. 2d 260 (C.A. 7, 1940), affirming a Memorandum Opinion of this Court, certiorari denied 311 U.S. 691 (1940) ; and *Jahncke Service, Inc.*, 20 B.T.A. 837 (1930), it was held that a transferee is privy to a transferor and precluded from reopening a decision establishing the tax liability of his transferor. Although these cases involved decisions on the merits of the controversy, the same result should apply when the decision is based upon an agreement of the parties. The theory upon which the doctrine of res judicata is based is that the issue is decided after the parties have had an opportunity to raise all pertinent considerations; if the parties have agreed to waive that opportunity, there is no reason to provide them with another occasion to present additional considerations as to the merits of the issue. Furthermore, it would be a strange rule to confer upon the transferee broader rights than the transferor by allowing the transferee to relitigate an issue when a transferor is denied that privilege. Finally, the reasons for putting an end to litigation apply with equal force when transferee liability is being asserted. The transferee should be protected from the Commissioner changing his mind and seeking reconsideration of an agreement previously made with the transferor, and the transferee also should not be allowed to cast aside the agreement.

We hold that. res judicata applies to the stipulated decisions agreed to by the estates and that the transferees may not have those tax liabilities reconsidered on the merits. This result is consistent with the statement of the Supreme Court in the *International Building Co.* case and with the decisions subsequently made by the Court of Claims and the District Courts, and we think that it is consistent with sound reason. Thus, this Court will no longer follow its early decisions in *Wayne Body Corporation*, *supra*, and *Keener Oil & Gas Co.*, *supra*.

Our holding as to res judicata does not dispose of the case. David contends that Henry had no authority to bind the transferor estates by agreeing to stipulated decisions filed with this Court since Henry had previously been discharged by the Probate Court as administrator of the Estate of William Krueger and executor of the Estate of Anna Krueger. Therefore, David argues that the stipulated decisions are void or voidable.

It seems clear that the stipulated decisions may be collaterally attacked on the ground that they are void or voidable. *Coe* v. *Armour Fertilizer Works*, 237 U.S. 413 (1915) ; Restatement, Judgments sec. 11. The Court of Appeals for the Seventh Circuit, in *First Nat. Bank* v. *Commissioner*, *supra*, described the rights of a transferee in a proceeding such as this as follows:

It is our thought that a judgment against a transferor for taxes, without fraud or collusion, in a court having jurisdiction over the subject matter and the parties, may, consistently with due process of law, be treated as concluding the

transferee respecting the existence and amount of indebtedness so adjudged. True, before the property he holds may be taken in satisfaction of the statutory indebtedness, he is entitled upon the most fundamental principles to his day in court and a hearing upon the question as to whether the judgment is void or voidable for want of jurisdiction or fraud and, of course, he has a right, for the same reason, to show that he has not received property as transferee sufficient to discharge the liability. * * * [112 F. 2d at 262]

David bases his argument that Henry had no authority to bind the transferor estates on *Hulburd* v. *Commission*, 296 U.S. 300 (1935). That case held that executors who had been discharged after full settlement of the estate were not subject by the law of Illinois to assessment or suit in their representative capacities. However, the Court had to rely on local law for its decision, since the executors were discharged prior to the enactment of section 281(b) of the Revenue Act of 1926, the predecessor of section 6903.

Section 6903(a) provides:

SEC. 6903. NOTICE OF FIDUCIARY RELATIONSHIP.

(a) RIGHTS AND OBLIGATIONS OF FIDUCIARY.—Upon notice to the Secretary or his delegate that any person is acting for another person in a fiduciary capacity, such fiduciary shall assume the powers, rights, duties, and privileges of such other person in respect of a tax imposed by this title (except as otherwise specifically provided and except that the tax shall be collected from the estate of such other person), until notice is given that the fiduciary capacity has terminated.

When this provision was enacted, its purpose was stated to be to provide definite rules for determining with whom the Commissioner of Internal Revenue should deal when a fiduciary is appointed.[6] If the Commissioner is not notified of the appointment of the fiduciary, he should continue to deal with the taxpayer; but if he is notified of the appointment of a fiduciary, he may deal with that fiduciary on the assumption that the fiduciary has the continuing authority to act until the Commissioner is notified otherwise.

In *Sanborn* v. *Helvering*, 108 F. 2d 311 (C.A. 8, 1940), affirming 39 B.T.A. 721 (1939), the court held that an executor could suspend the running of the statute of limitations against assessment and collection of additional taxes from an estate by filing a petition with the Board of Tax Appeals even though the executor had been discharged from his functions as representative of the estate and admitted such discharge in the petition. The executor had given notice of his appointment in accordance with the predecessor of section 6903, but not notice of the termination of his authority. In discussing the effect of the predecessor of section 6903, the court stated that:

The statute clearly provides for the continuation of the powers and duties of a fiduciary with respect to a tax until a specified notice is given. It does not provide that notice of termination of fiduciary capacity contained in a petition filed with

---

[6] See S. Rept. No. 52, 69th Cong., 1st Sess. (1926), 1939–1 C.B. (Part 2) 355.

the Board shall be deemed the equivalent of the statutory notice. It does not authorize the Commissioner to waive the statutory notice. * * * [108 F. 2d at 313].

This holding has been followed in *Estate of Nellie L. Rhodes*, 44 B.T.A. 1315 (1941), and *John M. Eversole*, 46 T.C. 56 (1966).

Henry filed notices of his appointment as administrator and executor of the Estate of William Krueger and the Estate of Anna Krueger, but did not file any notice of the termination of such fiduciary relationships. David argues that, even though no such notice was filed, the respondent should have known that Henry's fiduciary relationship with the estates had terminated. As stated in *Sanborn* v. *Helvering, supra*, such knowledge, even if it did exist, is not the notice required by section 6903. Accordingly, we hold that Henry had the authority to bind the estates of William Krueger and Anna Krueger by agreeing to the stipulated decisions filed with this Court.[7] Although David also argues that under Illinois law Henry had no authority to act after the discharge, it is unnecessary for us to consider the effect of Illinois law since section 6903 provides him with continuing authority regardless of Illinois law.

David has made one final argument concerning the validity of the stipulated decisions. He says that Henry signed such stipulations under duress. He points out that although Henry had been sentenced for tax evasion, he was placed on probation on condition that he pay all taxes found legally due. In addition, Henry was apparently incurring large interest obligations on his own tax liabilities. David argues that the respondent refused to settle Henry's personal tax liabilities unless Henry would, at the same time, settle the tax liabilities of the estates.

Ordinarily, duress should not be raised collaterally, but should be raised in connection with the original decision. *Herman Roberson*, 41 T.C. 577 (1964). Nevertheless, we have considered the argument and examined the circumstances of this case to determine whether duress has been proved.

Since David has raised the charge of duress, he has the burden of proving it. See *Hazel Stanley*, 45 T.C. 555 (1966); *Duncan* v. *United States*, 39 F. Supp. 962 (W.D. Ky. 1941); *Shaw & Truesdell Co.* v. *United States*, 1 F. Supp. 834 (E.D. N.Y. 1932). In *Hazel Stanley*, this Court adopted the following definition of duress: Any unlawful threats which do in fact overcome the will of the person threatened, and induce him to do an act which he would not otherwise have done, and which he was not bound to do, constitute duress. Hence, for David to carry his

---

[7] This holding is based upon the provisions of sec. 6903. We express no opinion here as to what the result would be if Henry had given respondent the notice of termination of his fiduciary capacity.

burden of proof, he must prove, among other things, that Henry was induced by the respondent's coercion to agree to the stipulated decisions and that without such coercion, he would not have agreed to them.

When we examine the evidence, we find it ambiguous. Henry testified that he would not have agreed to the stipulated decisions on behalf of the estates were it not for the respondent's demand that he do so in return for their agreeing to settle his own tax liabilities. On the other hand, the circumstances as recalled by the lawyer who represented Henry in connection with the stipulated decisions cast some doubt on Henry's testimony. The lawyer testified that Henry did not reveal to him that he agreed to the stipulated decisions only because of the Government's demand. The tax liabilities of the estates and of Henry involved common transactions, and from the lawyer's testimony, we see nothing more than the customary negotiations with the view to settling all tax liabilities growing out of such transactions. What impresses us even more is that Henry has never raised the issue of duress; he did not at the time the stipulated decisions were entered in 1962, and he has not raised it as an issue in this proceeding. It seems that if he felt that he acted under duress, he would have raised the issue at some time. Although David vigorously asserts that Henry acted under duress, we think that Henry's silence is very significant. Under such circumstances, David has failed to convince us that Henry acted under duress.

We therefore conclude that the stipulated decisions entered by the Tax Court against the Estate of William Krueger and the Estate of Anna Krueger were valid decisions and that such decisions are binding on the petitioners David and Henry, as transferees of such estates, as to the question of the proper tax liabilities of the estates. However, part of the liability asserted by the respondent against David and Henry was based on assessed deficiencies in the income tax of Anna Krueger for the taxable years 1958, 1959, and 1960. Since no petition was filed with the Tax Court in connection with such deficiencies res judicata does not apply to that part of the liability, and therefore, David and Henry may contest such part. See *Jahncke Service, Inc., supra; Archibald Sherrod,* 16 B.T.A. 622 (1929).

Reviewed by the Court.

> *The parties are directed to move with respect to further proceedings in the case, or otherwise act, on or before Oct. 16, 1967.*