PAUL YU and BETTY YU, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent HONG KONG ELECTRONICS, formerly known as: AD-YU ELECTRONICS LAB., INC., Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Yu v. Commissioner
Docket Nos. 3429-68 and 3460-68
United States Tax Court
T.C. Memo 1973-188; 1973 Tax Ct. Memo LEXIS 99; 32 T.C.M. (CCH) 878; T.C.M. (RIA) 73188; August 27, 1973, Filed Gerald Backer, for the respondent. DAWSON
MEMORANDUM FINDINGS OF FACT AND OPINION DAWSON, Judge: Respondent determined the following Federal income tax deficiencies and additions to tax against the petitioners: 2 Petitioners
Docket No.
Year
Deficiency
n1 Additions to Tax Sec. 6653(b) Paul and Betty Yu
3429-68
1960
$151,137.83
$75,568.92
1961
51,150.09
25,575.05
1962
156,588.74
78.294.37
Hong Kong Electronics, formerly ,
3460-68
1960
122,675.16
61,337.58
formerly known as
1961
43,139.94
21,616.24
1962
25,017.31
12,508.66
*100 [1]
[1]
The petitioners received notices that these cases would be tried in Newark, New Jersey. There were no appearances by or on behalf of the petitioners at the trial. The evidence consisted of oral testimony and documents submitted by respondent's counsel. The issues for decision are: (1) Whether the petitioners understated their taxable income and are liable for the deficiencies determined by respondent for the years 1960 through 1962; (2) whether any part of the underpayment of tax for each of the taxable years 1960 through 1962 was due to fraud with intent to evade tax; and (3) whether assessment of any deficiencies determined for the years 1960 through 1962 is barred by the statute of limitations. FINDINGS OF FACT Paul and Betty Yu resided in Oakland, New Jersey, when they filed their petition in this proceeding. 3 Hong Kong Electronics, formerly known as Ad-Yu Electronics Lab., Inc., was a New Jersey corporation which had its principal place of business in Passaic, New Jersey, when its petition was filed herein. Paul Yu was *101 the founder, an owner of and operator of Ad-Yu Electronics, Lab., Inc. (sometimes referred to as Labs). Labs was engaged in the development of and manufacture of sophisticated electronic equipment. The products it produced were well received throughout the world and among its customers was the United States Government. During the years 1960 through 1962 Paul Yu was in complete charge of the business and financial operations of Labs including recordkeeping. His wife, Betty Yu, was familiar with and had an important role in the business and financial operations of Labs, including recordkeeping. Paul and Betty Yu filed joint Federal income tax returns for the years 1960 and 1961 reflecting, as their only source of income, salaries from Labs in the respective amounts of $11,500 and $12,000 and tax liabilities of $1,706 and $1,836, respectively. The returns for 1960 and 1961 were filed respectively on April 17, 1961, and April 16, 1962. Corporate Federal income tax returns were filed for Labs for the year 1960 on March 15, 1961, and for the year 1961 on March 20, 1962, reflecting gross receipts in the respective amounts of 4 $190,534.16 and $479,389.91, taxable income of *102 $230.13 and $308.42, respectively, and income tax liabilities of $69.04 and $92.53. Paul and Betty Yu made a practice of using aliases in their business dealings and would affix signatures to business documents of Labs (including Labs' returns) by means of a steel stamp bearing a signature of the alias employed. Only Paul and Betty Yu had access to the steel stamps. Paul and Betty Yu employed aliases to hamper any governmental investigation of their financial affairs. In April 1961, the Internal Revenue Service received information that Paul Yu was concealing income by not reporting all of Labs' sales, especially foreign sales, and using a Hong Kong office for this deception. Labs, and Paul Yu personally, had business contacts in Hong Kong. Paul Yu made numerous trips there. For example: Labs was making excessive and unwarranted payments to an E-Ping Company of Hong Kong; an employee of Labs under the direction of Paul Yu had been arrested and convicted by Canadian authorities for attempting to smuggle sophisticated electronics devices through Hong Kong to the Chinese mainland. In July 1962, a revenue agent was assigned the 1960 and 1961 Federal income tax returns of *103 Labs and of Paul and Betty Yu for audit. Upon commencing his audit, the agent was advised that books and records 5 were not then available and that he would be contacted. That agent was not contacted and the case was later assigned to a new agent, Paul Birmer, in September 1962. After the audit of Labs for 1960 and 1961 was commenced, a new corporation, Ad-Yu Electronics (hereinafter called Ad-Yu) was formed. Ad-Yu operated the assets of and conducted the same business as Labs in years subsequent to 1962. Labs filed a 1962 return and no subsequent returns. The 1963 and subsequent returns were filed by Ad-Yu. After being assigned the case, Mr. Birmer extended the audit to include the 1962 returns of Paul and Betty Yu and Labs. Paul and Betty Yu had filed a joint Federal income tax return for the year 1962 on April 15, 1963, reflecting, as their only source of income, salaries from Labs and Ad-Yu in the respective amounts of $13,250 and $430 and an income tax liability of $2,272.80. A corporate Federal income tax return for 1962 had been filed for Labs on October 21, 1963, reflecting sales income of $423,565.25, a net loss of $155,761.02, and by reason thereof no income *104 tax liability. Mr. Birmer, upon commencing his 1960, 1961 and 1962 audit, requested all books and records including the general ledger, journals, workpapers, stock certificate books, minutes and any records involved in the preparation of income tax returns. Ultimately the following limited records of Labs were turned over to Mr. Birmer for audit. For 1960: Original sales invoices, the sales book, the cash disbursements 6 book, the purchase book, the bank statements, and canceled checks. For 1961: Original sales invoices, bank statements and canceled checks. For 1962: No records were made available by petitioners. The original sales invoices for the year 1960 showed that Labs had failed to report sales income of $200,863.35. These invoices reflected aggregate domestic sales of $392,785.96 and foreign sales of $46,557.38, or total sales of $439,343.34. Since Labs was on the cash basis, sales in 1960 of $47,745.83, not collected until 1961, were deleted, leaving a balance of $391,597.51. The sales income reported by Labs for the year 1960 totaled $190,534.16, and $200,863.35 of sales income was not reported. With respect to the year 1961, the available original sales *105 invoices established that there were total foreign and domestic sales receipts in 1961 of $504,740.34. To that amount was added the 1960 sales collected in 1961 of $47,745.83, for a total receipts in 1961 of $552,486.17. Labs reported $479,389.91 of sales income and thereby understated sales income by the amount of $73,096.26. With respect to the year 1962, the year for which no records were turned over to Mr. Birmer, he made no adjustments to reported sales income. 7 In the 1962 return filed for Labs a deduction was taken for "commissions" in the amount of $159,258.49. Mr. Birmer disallowed that deduction because Labs' representatives could not supply any proof or substantiation that Labs had, in fact, incurred a business expense of this nature in any amount. Labs' representatives postulated that these amounts possibly were not commissions but additional salaries and wages paid employees. Mr. Birmer had allowed Labs deductions for salaries and wages, approximating the challenged deduction, paid to both factory and office personnel, which deductions had been substantiated through W-2 forms and like documentation. Mr. Birmer established that Paul and Betty Yu were *106 diverting Labs' unreported receipts for their own account and claimed amounts for false deductions in the years 1960, 1961 and 1962 by the following: a. Canceled checks obtained from Labs' customers established that Paul Yu was endorsing Labs' checks but not depositing them in Labs' bank account.
b. These checks were instead deposited in 23 savings accounts and 9 checking accounts in banks located throughout the United States; in New York, New Jersey, Nevada, California and Washington. The addresses given for these accounts were either Labs' plant in Passaic, New Jersey, or the house adjoining Labs' plant owned by Paul Yu. 8 c. The depositors names given for these accounts were either Paul and Betty Yu or the Chinese equivalents of Paul and Betty Yu, or Chinese names which were aliases of Paul and Betty Yu. d. The total amounts deposited in these accounts in the years 1960, 1961 and 1962 were $80,391.14, $159,207.89 and $93,264.04, respectively. To further corroborate diversions from Labs by the Yus, Revenue Agent Birmer made an analysis of the capital acquisitions and cash expenditures of Paul and Betty Yu during each of the years 1960, 1961 and 1962. During *107 those years 1960, 1961 and 1962, the Yus made purchases of securities and real estate, made loans to Labs, increased their bank balances and made cash expenditures in the respective aggregate amounts of $105,722.13, $225,602.11 and $165,439.64. The records of the above banks also established that Paul and Betty Yu received interest income, which they failed to report, in the years 1960, 1961 and 1962 in the respective aggregate amounts of $1,828.08, $2,996.80 and $2,877.41. Revenue Agent Birmer submitted his initial Revenue Agent's report in January 1967 and subsequently received information that Paul and Betty Yu were contemplating removal of assets from the United States. He then recommended that the deficiencies set forth in his report be immediately assessed. Jeopardy assessments were 9 made on February 12, 1968, against Paul and Betty Yu and Labs for the deficiencies determined for the years 1960, 1961 and 1962. After the jeopardy assessments and after collection procedures were commenced, Paul Yu surreptitiously contacted a former employee of Labs who was then working for a stock brokerage company to ask him to change the addresses of his brokerage account and *108 to have all dividends sent to a Hong Kong address. After the agent received this information, stock brokerage houses in the New Jersey and New York areas were circularized to ascertain if there were unreported dividends in 1960, 1961 and 1962. During 1960, 1961 and 1962, Paul and Betty Yu had four or five stock brokerage accounts under the name Paul Yu, or their Chinese names, Yeo Pay Yu and Bei Yu, with the address given being either Labs' plant or the home adjoining the plant owned by Paul Yu. The records of the brokerage houses established that Paul and Betty Yu had received, and failed to report, dividend income from various publicly held corporations in the years 1960, 1961 and 1962, in the respective aggregate amounts of $1,444, $2,135.20 and $2,479.81. Throughout the period Mr. Birmer was auditing Paul and Betty Yu's returns, no mention was made to him of the existence of these brokerage accounts and the fact that dividends were not reported in their 10 Federal income tax returns. Mr. Birmer's report had been sent to Paul and Betty Yu and indicated no adjustments for dividends from publicly held corporations and, after receipt of that report, no mention was made *109 to Mr. Birmer of the existence of brokerage accounts and the fact that dividend income was not reported. Sometime after submitting his report, Mr. Birmer ascertained that Labs was dormant and that Ad-Yu had been formed and was operating Labs' assets. By reason of this, he recommended jeopardy assessments of transferee liability which were made against Ad-Yu for Labs' liabilities for 1960, 1961 and 1962. Subsequent to the assessments, Ad-Yu filed a petition in bankruptcy under Chapter XI of the Bankruptcy Act. The United States filed a proof of claim in that proceeding for the amount of the transferee assessments against Ad-Yu. Ad-Yu filed a motion to expunge the claim of the United States and a hearing was held thereon before the Referee in Bankruptcy, who entered a judgment against Ad-Yu in favor of the United States for the income tax deficiencies due from Labs for the years 1960, 1961 and 1962 in the respective amounts of $122,675.16, $43,139.94 and $25,017.31, as set forth in the statutory notice of deficiency herein. No appeal was taken by Ad-Yu and the judgment is final. 11 In so holding, the Referee in Bankruptcy found that Ad-Yu was a continuation of Labs, *110 with the same principals operating the same business, and as such the United States as a creditor of Labs was entitled to satisfy its claim from any property of Ad-Yu and not only from assets transferred from Labs to Ad-Yu. In 1962 Labs changed its name to Hong Kong Electronics. The statutory notice of deficiency for the years 1960, 1961 and 1962 was sent on April 12, 1968, to "Hong Kong Electronics, formerly known as: Ad-Yu Electronics Lab., Inc." The statutory notice of deficiency for the years 1960, 1961 and 1962 was sent to Paul and Betty Yu on April 12, 1968, which date was within 6 years of the date the 1961 and 1962 returns were required to be filed. At the trial no testimony or documentary evidence was offered to refute the determination of deficiencies in income taxes in the years 1960, 1961 and 1962 as set forth in the notices of deficiency which are the basis of the petitions in these cases. In addition, no testimony or documentary evidence was introduced on behalf of Paul and Betty Yu or on behalf of Hong Kong Electronics regarding additions to tax for fraud asserted against Paul and Betty Yu and Hong Kong Electronics (Labs) in each of the years 1960, 1961 and *111 1962. 12 ULTIMATE FINDINGS 1. Petitioners Paul and Betty Yu and Hong Kong Electronics (Labs) failed to show any errors in the determinations made by respondent of petitioners' taxable income for each of the years 1960, 1961 and 1962. 2. For each of the years 1960 through 1962 a part of the underpayment of tax by petitioners Paul and Betty Yu and Hong Kong Electronics (Labs) was due to fraud with intent to evade tax, and each of their Federal income tax returns for those years was a false and fraudulent return with intent to evade tax. OPINION Issue 1 - Determinations of Taxable Income Petitioners have the burden of overcoming the presumption of correctness which attaches to the deficiencies determined by the respondent. Welch v. Helvering, 290 U.S. 111 (1933); Ullman v. Commissioner, 264 F.2d 305, 308 (C.A. 2, 1959), affirming 29 T.C. 129 (1957); and Thomas B. Jones, 29 T.C. 601 (1957). There is no evidence in this record to rebut or otherwise overcome respondent's determinations of petitioners' taxable income for the years in issue. Therefore, we hold that petitioners are liable for the full amount of the deficiencies *112 set forth in the notices of deficiencies in these cases. 13 Betty Yu failed to offer any evidence to establish that she is entitled to the benefits of the "innocent spouse" provisions of section 6013(e) of the Code. She was on notice of her husband's omissions, and she has not shown either that she did not significantly benefit from the omitted income or any other fact that would make it inequitable to hold her liable. See Raymond H. Adams, 60 T.C. No. 36 (May 29, 1973); Jerome J. Sonnenborn, 57 T.C. 373 (1971); Nathaniel M. Stone, 56 T.C. 213 (1971). In addition to offering no evidence on the deficiencies determined against Hong Kong Electronics (Labs) for the years 1960, 1961 and 1963, the doctrine of res judicata applies because of the findings of fact and conclusions of the Bankruptcy Court relating to the same income tax liabilities for the same taxable years. Tait v. Western Maryland Railway Co., 289 U.S. 620 (1933); Commissioner v. Sunnen, 333 U.S. 591 (1948); and David Krueger, 48 T.C. 824 (1967).
Issue 2 - Additions to Tax Under Section 6653(b) Respondent has the burden of proving *113 fraud by clear and convincing evidence. Section 7454(a); W. A. Shaw, 27 T.C. 561 (1956). 14 He must establish that there were, in fact, underpayments of tax and that a part of the underpayments was due to fraud. Arlette Coat Co., 14 T.C. 751 (1950). With respect to the understatements of income in each year the record shows: 1. Respondent established through use of original sales invoices that Labs had understated its sales income and taxable income in each of the years 1960 and 1961 in the respective amounts of $200,863.35 and $73,096.26. 2. Respondent affirmed such understatements and established they were diverted by Paul and Betty Yu to their own accounts by submitting proof that customers' checks received by Labs and endorsed by Paul Yu were not deposited in Labs' bank account but were either cashed or deposited by Paul and Betty Yu in their various personal savings and checking accounts. The Yus reported a gross income of $11,500 and $12,000, respectively, in the years 1960 and 1961 and, without considering taxes paid, were able to make deposits of $80,391.14 and $159,207.89 in their various savings and checking accounts. 3. Respondent *114 established that in the year 1962 Labs understated taxable income by claiming a false deduction for "commissions" in the amount of $159,258.49 by showing that Labs could produce no substantiation that such an expense was incurred or paid. Respondent 15 affirmed the false deduction and that the amount was diverted by Paul and Betty Yu by submitting proof that the Yus were able in 1962 to deposit in various bank accounts the sum of $93,264.04 while reporting gross income of $13,680. 4. Respondent established that Paul and Betty Yu in each of the years 1960, 1961 and 1962 received and failed to report dividends received from publicly held companies in the respective amounts of $1,444, $2,135.20 and $2,479.81. 5. Respondent established that Paul and Betty Yu received and failed to report interest income from various savings banks in the years 1960, 1961 and 1962 in the respective amounts of $1,828.08, $2,996.80 and $2,877.41. The following "badges of fraud" clearly point to the fact that false and fraudulent returns were filed by Paul and Betty Yu and by Hong Kong Electronics (Labs) in each of the years 1960, 1961 and 1962: 1. Petitioners failed to produce for examination *115 adequate and complete books and records in any of the years involved herein and for the year 1962 produced no books or records whatsoever. 2. Petitioners used aliases in conducting their business affairs in order to conceal sources of income and to thwart a governmental investigation of their affairs. 16 3.Petitioners cashed or deposited customers' checks of Labs in personal bank accounts, rather than depositing them in the corporate bank accounts. These personal accounts were in some 30 banks located throughout the United States. Petitioners' activities were patently calculated to conceal both personal and corporate income. 4. Petitioners transmitted funds to and utilized a Hong Kong location patently as a means of concealing corporate receipts and business activity. 5. Petitioners, after the jeopardy assessment, surreptitiously contacted an employee of a stock brokerage house and directed him to have all their dividends sent to Hong Kong (rather than to Labs' plant) patently to conceal the existence of dividend income. Accordingly, we hold under these circumstances that respondent has established by clear and convincing evidence that Paul and Betty Yu and Hong *116 Kong Electronics (Labs) filed false and fraudulent returns for the years 1960, 1961 and 1962. We also conclude that Betty Yu is not entitled to be relieved of the fraud penalty under the "innocent spouse" provisions of section 6653(b) since she took an active role in the business affairs of Hong Kong Electronics (Labs) and knew of diversions to her husband and herself; she knew and condoned the fact that a Hong Kong office was being used to 17 conceal and divert unreported corporate income; and she knew of and condoned the use of Chinese aliases as a means of concealing unreported income. Issue 3 - Statute of Limitations Having determined that a part of the underpayment of tax in each of the years 1960, 1961 and 1962 was due to fraud with intent to evade tax by Paul and Betty Yu and Hong Kong Electronics (Labs), it follows that the assessment of deficiencies for such years is not barred by the statute of limitations. See section 6501(c) (1) of the Code. Decisions will be entered for the respondent. Footnotes
1. All 21,616.24
Ad-Yu Electronics Lab., Inc. 1962 25,017.31 12,508.66 ↩
1. All 1954, as amended, unless otherwise indicated. ↩