# United States Tax Court

T.C. Memo. 2022-103

SANDRA E. SANDER, DECEASED,
Petitioner

v.

COMMISSIONER OF INTERNAL REVENUE,
Respondent

————

Docket No. 22472-16.                    Filed October 6, 2022.

————

S died a resident of Florida. Upon S's death, S's daughter became the sole trustee of a trust that S had established during her life. R issued a notice of deficiency to S. S's daughter filed a Petition for redetermination of the deficiencies. S's daughter has not been appointed a personal representative of S's estate by a Florida probate court.

*Held*: S's daughter is not authorized to be substituted for S as a party in the case.

————

*James A. Kutten*, for petitioner.

*Jamie M. Powers* and *Karen O. Myrick*, for respondent.

## MEMORANDUM OPINION

MORRISON, *Judge*: Before her death, Sandra Sander established a trust.[1] She was a co-trustee of the trust with her daughter

————

[1] The Sandra E. Sander Lifetime Trust.

[*2] Leda.  Leda was nominated as personal representative by Sandra's will.  On July 4, 2016, Sandra died.  Under the terms of the trust, at Sandra's death (1) Leda was to become the sole trustee and (2) the assets of the trust were to be transferred to three new separate trusts for each of Sandra's three children (including Leda).  On July 15, 2016, the Internal Revenue Service (IRS) issued a notice of deficiency to Sandra determining income tax deficiencies of $28,123 for 2013 and $25,544 for 2014 as well as a section 6662(a) penalty of 20% of the determined amount of the deficiency for each year.[2]  On October 17, 2016, Leda filed a Petition for redetermination of the deficiencies in Sandra's name.  Leda filed a Motion to Substitute Parties and Change Caption seeking to substitute herself, as trustee of the original trust, for Sandra in this litigation.  No personal representative for Sandra's estate has been appointed by a Florida circuit court.  We hold that Leda does not have the authority to act for Sandra in this case.  Therefore, we will deny Leda's Motion for Substitution.  Respondent filed a Motion to Dismiss for Lack of Jurisdiction on the ground that Leda does not have the authority to act for Sandra.  We reserve ruling on respondent's Motion to Dismiss for Lack of Jurisdiction to allow an opportunity for a probate action to be commenced for Sandra's estate and for a personal representative to be appointed.

*Background*

On March 15, 1991, Sandra created the Sandra E. Sander Revocable Trust.  The record does not reveal the terms of the corresponding trust instrument.

On April 15, 2014, Sandra's 2013 income tax return was due.  Her liability for income tax for that year arose then.

On October 25, 2014, Sandra executed a "bill of sale" by which she transferred all her tangible personal property, other than that held as an investment or used in connection with a business, to the trustee of the Sandra E. Sander Revocable Trust.

On October 25, 2014, Sandra executed a trust instrument that we refer to as the Sandra E. Sander Lifetime Trust.  The Sandra E. Sander Lifetime Trust revoked the provisions of the "SANDRA E. SANDER LIFETIME TRUST . . . dated June 17, 1997 amended March 16, 1998

---

[2] Unless otherwise indicated, all statutory references are to the Internal Revenue Code, Title 26 U.S.C., in effect at all relevant times, and all Rule references are to the Tax Court Rules of Practice and Procedure.

**[\*3]** and May 29, 1998, made and entered into by SANDRA E. SANDER, as the grantor and SANDRA E. SANDER as the trustee." The record does not reveal the substance of the revoked provisions.[3]

The Sandra E. Sander Lifetime Trust provides that the co-trustees of the trust are Sandra and her daughter Leda. It further provides that if Sandra "shall cease to serve for any reason, [Leda] shall serve as sole trustee."

Article II includes provisions related to the administration of the trust during Sandra's lifetime. Article II allowed Sandra to amend or revoke the trust provisions and to have the trust make distributions of its assets to her.

Articles III and IV of the Sandra E. Sander Lifetime Trust contain provisions related to the payment and distribution of certain assets of the trust after Sandra's death. We describe these provisions below.

Article III, section 1 provides:

After the death of the grantor [i.e., Sandra], the trustee may, in the trustee's sole discretion, pay out of the remaining principal of the trust estate any or all legal debts, any or all expenses of administration of the grantor's probate estate and any or all of the expenses of the grantor's last illness and funeral or memorial service. It is the grantor's desire that the trustee will make the payments authorized under the provisions of this ARTICLE only if, in the opinion of the trustee, it is impossible, inadvisable or impracticable for such payments to be made by the personal representative of the grantor's probate estate.

Article III, section 2 provides that upon the death of Sandra, the "trustee" of the Sandra E. Sander Lifetime Trust will distribute the "items of tangible personal property which are part of the trust estate"

---

[3] Leda contends that the "Sandra E. Sander Lifetime Trust," by its terms, revoked "all of Sandra's prior living trusts." The Sandra E. Sander Lifetime Trust on its face revoked "all of the provisions of the Trust Agreement," where the term "Trust Agreement" was defined as the "SANDRA E. SANDER LIFETIME TRUST . . . dated June 17, 1997 amended March 16, 1998 and May 29, 1998, made and entered into by SANDRA E. SANDER, as the grantor and SANDRA E. SANDER, as the trustee." By its terms, the Sandra E. Sander Lifetime Trust revoked only a June 17, 1997, trust.

**[\*4]** to Sandra's "surviving children." However, the same section provides that any items identified in a written list signed by Sandra were to be distributed by the trustee to the persons named on the list. The record does not reveal whether such a list existed.

Article III, section 3 provides that the

> trustee shall pay, without contribution or reimbursement, out of the remaining trust assets all estate, inheritance, succession, transfer and other death taxes of any kind, including any interest and penalties thereon, payable with respect to all property taxable by reason of the grantor's [Sandra's] death, whether or not passing under this instrument, including, but not limited to, life insurance, jointly-held assets and assets passing pursuant to a beneficiary designation.

Article IV defines the term "Remaining Trust Property" as "all of the assets of the trust estate which are not required for the disbursements described in ARTICLE III, above, including any assets received from the grantor's probate estate, or from any other source." Article IV provides the remaining trust property must be "divided, per stirpes, for the benefit of the grantor's [Sandra's] descendants who survive the grantor and shall be held in separate trusts for the benefit of such descendent with income and principal administered and distributed pursuant to the provisions of ARTICLE V hereof."

Article V sets forth provisions to be followed by the trustees of each of the separate trusts for the benefit of Sandra's descendants.[4]

Article VIII, section 1 grants various powers to the trustee of the Sandra E. Sander Lifetime Trust (and the trustees of the trusts for Sandra's descendants):

> The trustee, in the administration of each trust estate hereunder, in addition to those powers, duties and immunities provided under the laws of the governing jurisdiction, shall have, subject to the limitations

---

[4] The trustees of these separate trusts for the benefit of Sandra's descendants are, pursuant to article VII(1)(b) of the Sandra E. Sander Lifetime Trust, each respective descendant of Sandra.

**[\*5]** hereinafter set forth, the following specific powers, duties and immunities, to-wit:

. . . .

1.12 *Compromise Debts.* To pay, compromise, compound, adjust, submit to arbitration, settle, or release any claims or demands of the trust estate as the trustee may deem advisable, including the acceptance of deeds of real property in satisfaction of bonds and mortgages, and to make any payments in connection therewith which the trustee may deem advisable.

. . . .

1.15 *Pay Expenses.* To pay any and all expenses, costs, fees, taxes, penalties or other charges, including any expenditures authorized by this ARTICLE, and to charge the same against principal or income, or partly against the principal and partly against the income, of the whole or any part of the trust estate, and including taxes on net gift transfers to the trust estate or any separate trust created hereunder.

Thus, under article VIII, section 1 the trustee of that trust has the power to pay or compromise claims of the trust (as provided in section 1.12 of the trust instrument) and the power to pay expenses (as provided in section 1.15 of the trust instrument).

Article VIII provides that each of the "trust estates provided for herein shall be governed by the laws of Florida."

On April 15, 2015, Sandra's 2014 income tax return was due. Her liability for income tax for that year arose then.

On July 4, 2016, Sandra died a resident of Florida. She is survived by her three daughters: Leda Sander, Stephanie Curtis, and Cassie Sander.

At the time of her death, Sandra had a will. Leda was nominated as personal representative in the will. The other terms of the will, such as the identities of the beneficiaries, are not revealed by the record.

**[\*6]** Under the terms of the Sandra E. Sander Lifetime Trust, Leda became the sole trustee when Sandra died. When Sandra died, a new trust was created for each of Sandra's three daughters pursuant to the terms of the Sandra E. Sander Lifetime Trust.

Leda retained an attorney who advised her that "there are no assets to probate."

Sandra's will was never probated, nor was a personal representative ever appointed for her estate.

On July 15, 2016, the IRS issued a notice of deficiency to Sandra for tax years 2013 and 2014 determining deficiencies and penalties for those years.

On October 17, 2016, Leda filed a Petition for redetermination of the deficiencies in Sandra's name. It advised the Court that Sandra had died. The Petition was signed by Leda, a resident of Missouri when the Petition was filed.

On April 27, 2017, Leda moved to substitute parties and change the caption such that, as trustee of the Sandra E. Sander Lifetime Trust, Leda would be substituted as the petitioner in the case.

On May 2, 2017, respondent filed a Motion to Dismiss for Lack of Jurisdiction arguing that the case should be dismissed because the Petition was not filed by a personal representative of Sandra's estate or by some other fiduciary.

On November 17, 2017, we held a hearing on both motions. Leda introduced two documents: (1) the Sandra E. Sander Lifetime Trust, i.e., the trust instrument dated October 25, 2014; and (2) the October 25, 2014, bill of sale. She also testified.

*Discussion*

I.   *Does Leda have the authority under Florida law to litigate this case?*

Rule 60 provides in pertinent part:

**(a) Petitioner:** (1) *Deficiency or Liability Action*: A case shall be brought by and in the name of the person against whom the Commissioner [i.e., the IRS] determined

**[\*7]** the deficiency (in the case of a notice of deficiency) or liability (in the case of a notice of liability), or by and with the full descriptive name of the fiduciary entitled to institute a case on behalf of such person. See Rule 23(a)(1). A case timely brought shall not be dismissed on the ground that it is not properly brought on behalf of a party until a reasonable time has been allowed after objection for ratification by such party of the bringing of the case; and such ratification shall have the same effect as if the case had been properly brought by such party. . . .

. . . .

**(c) Capacity:** The capacity of an individual, other than one acting in a fiduciary or other representative capacity, to engage in litigation in the Court shall be determined by the law of the individual's domicile. The capacity of a corporation to engage in such litigation shall be determined by the law under which it was organized. The capacity of a fiduciary or other representative to litigate in the Court shall be determined in accordance with the law of the jurisdiction from which such person's authority is derived.

Leda seeks recognition from the Court, through her Motion, that she is authorized to act in this case. She claims that she is so authorized as the trustee for the Sandra E. Sander Lifetime Trust. The question of whether Leda was authorized to file a Petition on behalf of Sandra depends on whether state law authorizes her to file a Petition for Sandra. *See* Rule 60(c); *Fehrs v. Commissioner*, 65 T.C. 346, 349 (1975); *Estate of Peterson v. Commissioner*, 45 T.C. 497, 500 (1966). Leda has the burden of proving that she was so authorized. *See Fehrs*, 65 T.C. at 348.

No personal representative has been appointed for Sandra's estate. We will first explain the appointment process. In Florida a personal representative is appointed by a Florida circuit court under the Florida Probate Code.[5]

---

[5] The Florida Probate Code is Florida Statutes chapters 731 to 735. Fla. Stat. § 731.005 (2021). We refer to provisions of the Florida Probate Code as "Florida Probate Code § ___." All provisions of the Florida Statutes (including provisions of the

**[\*8]**  The powers granted to a personal representative are specified by Florida Probate Code § 733.612(20), which provides that a "personal representative . . . may properly: . . . [p]rosecute or defend claims or proceedings in any jurisdiction for the protection of the estate, of the decedent's property, and of the personal representative."

The "[e]state" is "the property of the decedent that is the subject of administration." *Id.* § 731.201(14).

Florida Probate Code § 731.201(28) defines a "[p]ersonal representative" as "the fiduciary appointed by the court to administer the estate."

In the Florida Probate Code the word "[c]ourt" is defined as the "circuit court." *Id.* § 731.201(7). Thus, for purposes of Florida Probate Code § 731.201(28), the word "court" means the circuit court. Circuit courts are given subject matter jurisdiction over probate matters by Florida Statutes § 26.012(2) (2021), which provides:

> Circuit courts shall have exclusive original jurisdiction . . . (b) [o]f proceedings relating to the settlement of the estates of decedents and minors, the granting of letters testamentary, guardianship, involuntary hospitalization, the determination of incompetency, and other jurisdiction usually pertaining to courts of probate . . . .

A related venue provision provides: "The venue for probate of wills and granting letters shall be: (a) [i]n the county in this state where the decedent was domiciled." Florida Probate Code § 733.101(1)(a). This venue provision includes two terms of art that require explanation: "probate of wills" and "granting letters." The term "[p]robate of wills" is defined as "all steps necessary to establish the validity of a will and to admit a will to probate." *Id.* § 731.201(31). The term "[l]etters" refers to the "authority granted by the court [i.e., the circuit court] to the personal representative to act on behalf of the estate of the decedent." *Id.* § 731.201(24). The Florida Probate Code also provides that the terms "letters of administration" and "letters" have the same meaning. *Id.*

Although the word "administration" is not expressly defined in the Florida Probate Code, it is understood to mean "the process by which the personal representative collects the assets, pays the debts, and

---

Florida Probate Code) discussed in this opinion are found on the website www.leg.state.fl.us, using the year 2021 in the drop-down menu.

**[\*9]** makes distribution to the beneficiaries." David T. Smith, *The Potential Personal Representative: Ready, Willing, But Perhaps Unable to Act in Florida*, 48 Fla. L. Rev. 675, 691 (1996). In the provisions we have discussed, some form of the word "administration" has been used thrice. First, a form of the word was used to define a personal representative as "the fiduciary appointed by the court to administer the estate." Florida Probate Code § 731.201(28). Second, an "[e]state" is defined as the property of a decedent that is the "subject of administration." *Id.* § 731.201(14). Third, the word "administration" is in the term "letters of administration." *Id.* § 731.201(24).

In "granting letters of administration," the circuit court is to prefer the person nominated in the will to be the personal representative. *Id.* § 733.301; *Schleider v. Estate of Schleider*, 770 So. 2d 1252, 1253 (Fla. Dist. Ct. App. 2000).

The important point is that a person becomes the personal representative by being appointed by the circuit court acting in its probate capacity. *See* Shane Kelley & Jenna Rubin, *Practice under Florida Probate Code*, § 4.1 (2020) (explaining that the personal representative is the "court-appointed overseer of a decedent's probate estate").

Rule 60(c) provides that state law determines the capacity of a fiduciary to litigate in the Tax Court. The relevant state law, for the purpose of determining whether Sandra's personal representative could litigate this case, is Florida Probate Code § 733.612. That provision gives the personal representative the power to litigate for the "estate." *Id.* § 733.612(20). It follows that state law would give a personal representative of Sandra's estate the authority to proceed in Tax Court.[6]

---

[6] There is no precedent directly supporting the proposition that the personal representative under Florida law has the authority to litigate a Tax Court deficiency case. In *Estate of Arnett v. Commissioner*, 31 T.C. 320, 330 (1958), we held that an *administrator cum testamento annexo* (a type of office that is now included in the definition of a personal representative, Florida Probate Code § 731.201(28)) was authorized to litigate on behalf of a deceased taxpayer. And in *Davison v. Commissioner*, 13 T.C. 554, 556–57 (1949), we held that a wife who was not a "properly appointed and duly qualified administrator or executor" for the estate of her late husband was not authorized to litigate a deficiency proceeding on behalf of her late husband's estate. Both *Estate of Arnett* and *Davison* hinged on older provisions of Florida law.

**[\*10]** As noted above, Leda does not contend that she is a "personal representative" appointed by a Florida circuit court.[7]

---

[7] Leda does not argue that the effect of the statutory provisions for small estates under the Florida Probate Code (which we have not yet discussed) means that she has authority to act for her mother. These provisions are found in chapter 735 of the Florida Probate Code, entitled "Small Estates," which is split into two parts.

Part I of chapter 735 is titled "Summary Administration." It provides that "[s]ummary administration may be had in the administration of . . . [an] estate, when it appears" among other conditions, that "the value of the entire estate subject to administration in this state, less the value of property exempt from the claims of creditors, does not exceed $75,000 or that the decedent has been dead for more than 2 years." Florida Probate Code § 735.201. Part I further provides that the "estate may be administered in the same manner as the administration of any other estate, or it may be administered as provided in this part." *Id.* § 735.202. A petition for summary administration "may be filed by any beneficiary or person nominated as personal representative in the decedent's will offered for probate." *Id.* § 735.203(1). If a petition for summary administration is filed, then "the will, if any, shall be proved in accordance with chapter 733 [entitled "Probate Code: Administration of Estates"] and be admitted to probate." *Id.* § 735.206(1). Florida Probate Code § 735.206(3), which is in part I, provides that the circuit court "may enter an order of summary administration allowing immediate distribution of the assets to the persons entitled to them." Florida Probate Code § 735.206(2), which is in part I, provides that before an order of summary administration is entered, "the petitioner shall make a diligent search and reasonable inquiry for any known or reasonably ascertainable creditors, serve a copy of the petition on those creditors, and make provision for payment for those creditors to the extent that assets are available."

Part I does not give Leda the authority to litigate this action. Although part I allows a person to file a petition for summary administration, *id.* § 735.203, and although such a filer may pay creditors of the estate, *id.* § 735.206(2), that is not the same as the power to litigate estate matters outside the circuit court acting in its probate capacity. Leda has not petitioned for summary administration, so she does not have the powers held by someone who has petitioned for summary administration.

Part I of chapter 735 of the Florida Probate Code authorizes the circuit court handling a summary administration to order the immediate distribution of assets through an "order of summary administration." *Id.* § 735.206(3). But that does not confer powers on someone to litigate outside of that court.

Part II of chapter 735 is titled "Disposition of Personal Property Without Administration." Florida Probate Code § 735.301(1), which is in part II, provides:

> No administration shall be required or formal proceedings instituted upon the estate of a decedent leaving only personal property exempt under the provisions of s. 732.402, personal property exempt from the claims of creditors under the Constitution of Florida, and nonexempt

**[\*11]** Leda relies upon this Court's precedent in *Estate of Galloway v. Commissioner*, 103 T.C. 700 (1994), for the proposition that she has authority to act for her mother in this proceeding. In *Estate of Galloway*, the taxpayer died before the mailing of the notice of deficiency. *Id.* at 701. The taxpayer's daughter filed a Tax Court petition in the taxpayer's name. *Id.* The daughter had been named executor of the taxpayer's will. *Id.* However, she had not been appointed as a personal representative of the taxpayer by a California court. *Id.* Under California law, a personal representative of the decedent may commence legal actions for the benefit of the estate. Cal. Prob. Code § 9820(a) (West 2022). A personal representative also has the power to administer the estate. *Id.* § 8400(a). A person named as executor in a will has the right to be appointed a personal representative, *id.* § 8420, but does not have power to administer the estate until such appointment is made, *id.* § 8400(a).

California Civil Procedure Code § 377.30 (West 2022) provides that a "cause of action that survives the death of the person entitled to commence an action . . . may be commenced by the decedent's personal representative or, if none, by the decedent's successor in interest." California Civil Procedure Code § 377.32(a) (West 2022) provides that the person

---

personal property the value of which does not exceed the sum of the amount of preferred funeral expenses and reasonable and necessary medical and hospital expenses of the last 60 days of the last illness.

Florida Probate Code § 735.301(2), which is in part II, provides:

Upon informal application by affidavit, letter, or otherwise by any interested party, and if the court is satisfied that subsection (1) is applicable, the court, by letter or other writing under the seal of the court, may authorize the payment, transfer, or disposition of the personal property, tangible or intangible, belonging to the decedent to those persons entitled.

Although part II provides that "[n]o administration shall be required" if the assets of the decedent are low enough in value, *id.* § 735.301(1), it does not authorize anyone to litigate on behalf of the decedent outside the circuit court (acting in its probate capacity). Although part II allows an "interested party" to ask the circuit court (in its probate capacity) for an authorization to transfer the assets of the decedent, *id.* § 735.301(2), this is not the same as authorization to litigate outside such a court.

In summary, none of the provisions in part I or part II of chapter 735 regarding small estates authorizes Leda to litigate this case.

**[\*12]** who seeks to . . . continue a pending action . . . as the decedent's successor in interest under [article 3 of title 3 of the Cal. Civ. Proc. Code (Cal. Civ. Proc. Code §§ 377.30 to .35 (West 2022))], shall . . . file an affidavit or a declaration under penalty of perjury under the laws of [California] stating [that] . . . "[n]o proceeding is now pending in California for administration of the decedent's estate . . ." [and that the person is the] ". . . decedent's successor in interest . . . ."

California Civil Procedure Code § 377.33 (West 2022) provides that the "court in which an action is commenced or continued under this article [article 3 of title 3] may make any order concerning parties that is appropriate to ensure proper administration of justice in the case, including appointment of the decedent's successor in interest as a special administrator or guardian ad litem."

*Estate of Galloway*, 103 T.C. at 701, acknowledged that the taxpayer's daughter had not been appointed as a personal representative. *Estate of Galloway* also held that no affidavit or declaration had been prepared under California Civil Procedure Code § 377.32 sufficient to qualify the daughter (and certain other persons including the surviving spouse) as successors in interest. *Estate of Galloway*, 103 T.C. at 703. However, *Estate of Galloway*, 103 T.C. at 703–05, held that California Civil Procedure Code § 377.33, "[t]he controlling provision in these circumstances," authorized the Tax Court to order that the daughter could represent the decedent's estate in the Tax Court deficiency action. *Estate of Galloway* explained that it interpreted California Civil Procedure Code § 377.33 "in very broad terms" to give the Tax Court "the authority to make an appropriate order in the interest of justice." *Estate of Galloway*, 103 T.C. at 703. *Estate of Galloway* concluded: "Given the authority by Cal. Civ. Proc. Code sec. 377.33, . . . we will make an order appointing [the taxpayer's daughter] as a special administrator of decedent's estate solely for purposes of this action." *Id.* at 704–05.

Leda contends we should enter a similar order as to her. She argues:

This Court has prior precedent [i.e., *Estate of Galloway*], appointing a special administrator to pursue the Tax Court case where the facts support such action. Under the facts of this case, the Tax Court should exercise its discretion

**[\*13]** and appoint Leda, the trustee of Sandra's Living Trust [i.e., the Sandra E. Sander Lifetime Trust], a special administrator for Sandra.

But in *Estate of Galloway*, 103 T.C. at 703–04, the "controlling provision" was California Civil Procedure Code § 377.33. As to our case, the nearest counterpart is Florida Probate Code § 733.308 (2021), which we have not yet discussed. Florida Probate Code § 733.308 provides in part: "When an estate must be represented and the personal representative is unable to do so, the court shall appoint an administrator ad litem without bond to represent the estate in that proceeding." The word "court" in Florida Probate Code § 733.308 is defined in Florida Probate Code § 731.201(7) as "the circuit court." The "circuit court" refers to the Florida county court acting in its probate capacity. *See id.* § 733.101(1)(a). Thus, only the circuit court in its probate capacity can appoint an administrator ad litem to represent the estate under that provision.

This conclusion is supported by caselaw interpreting Florida Probate Code § 733.308. *Gomez v. Fradin*, 199 So. 3d 554 (Fla. Dist. Ct. App. 2016) (per curiam); *Middleton v. Cruce*, No. 4:13cv132-WS, 2014 WL 2117177 (N.D. Fla. May 21, 2014).

*Gomez* was an appeal of a nonprobate circuit court decision. *Gomez*, 199 So. 3d at 555. One of the defendants in the nonprobate circuit court suit died. *Id.* The plaintiffs sought to have the circuit court appoint a representative of the deceased defendant because no estate had been opened for him. *Id.* The circuit court held that it had no authority to appoint such a representative in the litigation, and it observed that the plaintiffs could petition for administration in the "probate court." *Id.* The plaintiffs appealed the order. *Id.* On appeal, the state court of appeals issued a per curiam opinion holding that it had no appellate jurisdiction over the circuit court's order refusing to appoint a representative of the deceased defendant because the order was not final and because the order, even if erroneous, did not irreparably harm the plaintiffs because they could petition for administration. *Id.* Thus, the appellate opinion did not evaluate the merits of the circuit court's conclusion. However, Judge Warner, concurring specially, explained that Florida Probate Code § 733.308 authorizes only the "probate court" to appoint an administrator ad litem and that therefore the circuit court was correct to rule that it could not appoint a representative for the deceased defendant. *Id.* (Warner, J., concurring).

**[\*14]** In *Middleton*, a plaintiff died after commencing litigation in the U.S. District Court for the Northern District of Florida. *Middleton*, 2014 WL 2117177, at \*1. The plaintiff's husband asked the district court to substitute him as the plaintiff. *Id.* at \*4. Later he submitted a motion with a different request: He asked the district court to stay the case until a Florida court could appoint one Joyce McCarthy as administrator ad litem under Florida Probate Code § 733.308 to litigate the case. *Middleton*, 2014 WL 2117177, at \*4. The district court rejected both requests. *Id.* First, the district court addressed the husband's contention that he should be substituted for his wife. *Id.* at \*5. It explained that under Florida law, the husband, as a convicted felon, was barred from being appointed as a personal representative. *Id.* Therefore, the district court held that the husband could not be substituted for his wife in the litigation. *Id.* Second, it rejected the husband's request that the litigation be stayed until McCarthy was appointed by a Florida court as administrator ad litem. *Id.* at \*4. The district court held that it was inappropriate for it to wait for the appointment of an administrator ad litem because the appointment of an administrator ad litem was authorized under Florida law only when there was a personal representative appointed who was unable to represent the estate. *Id.* at n.7. In the district court's view, there would be no occasion to appoint an administrator ad litem until a personal representative was appointed and was shown unable to fulfill the duties. *Id.* The district court held that although the case should not be delayed to await the appointment of an administrator ad litem, it should be continued "if Joyce McCarthy or some other individual is legally appointed personal representative for Plaintiff." *Id.* at \*5. Significantly, *Middleton* never suggested that the district court had the power to appoint an administrator ad litem. It assumed that this power could be exercised only by a Florida circuit court acting in its probate capacity.[8]

Leda contends that *Gomez* and *Middleton* are not instructive because those cases did not involve the trustee of a trust. Leda is the trustee of the Sandra E. Sander Lifetime Trust, and she contends that Fla. Stat. § 736.0816(23) (2021) gives her the authority to act for her mother's estate in this litigation. The provision authorizes a trustee to "[p]rosecute or defend, including appeals, an action, claim, or judicial

---

[8] *Middleton* raises another issue that would prevent us from appointing Leda an administrator ad litem under Florida Probate Court §733.308. Even if we were the appropriate court to make the appointment (we are not), *Middleton* suggests such an appointment can be made only if a personal representative has been appointed (and is unable to fulfill the duties). No such personal representative has been appointed.

**[\*15]** proceeding in any jurisdiction to protect trust property or the trustee in the performance of the trustee's duties." However, "trust property" is not directly involved in this case. This case involves the redetermination of the income tax deficiencies of Sandra for the 2013 and 2014 tax years. *See* § 6214(a). As part of the decision about the deficiencies, the Court would necessarily redetermine Sandra's tax liabilities for those years. *See* § 6211. To then collect these liabilities from the Sandra E. Sander Lifetime Trust, the IRS would need to invoke transferee liability concepts and show that the Sandra E. Sander Lifetime Trust is a liable transferee of Sandra. But such liability is a "secondary liability." Steve R. Johnson, *Unfinished Business on the Taxpayer Rights Agenda: Achieving Fairness in Transferee Liability Cases*, 19 Va. Tax. Rev. 403, 409 n.28 (2000). To allow the Sandra E. Sander Lifetime Trust to litigate this case merely because of its secondary liability would elevate that entity over all other persons who might be held secondarily liable for the income tax liabilities.[9]

---

[9] Leda makes the following contention: "Except for the assets of Sandra's Living Trust [i.e., the Sandra E. Sander Lifetime Trust] there are no assets to pay Sandra's potential 2013 and 2014 income tax liabilities." The record does not prove this statement. Leda testified that, by the time of our hearing, there were no assets in her mother's name. But even if that were so, the income tax liabilities can be collected from any person to whom Sandra's assets were transferred after the income tax liabilities arose.

The assets from which the IRS can collect the 2013 and 2014 income tax liabilities are not limited to the assets held by Sandra at the time of our motions hearing. The IRS can assert theories of transferee liability to collect the 2013 and 2014 income tax liabilities from persons to whom Sandra transferred her assets after the liabilities arose. *See* Michael I. Saltzman & Leslie Book, *IRS Practice and Procedure* ⁋ 17.01 (rev. 2d ed. 2018) (describing theories of transferee liability, including liabilities enforced under the procedures of section 6901); *id.* ⁋ 17.02[2] (explaining that a requirement for transferee liability under section 6901 is that "the taxpayer/transferor is liable for a tax both at the time of the transfer and at the time the transferee liability is asserted"). Sandra's 2013 and 2014 income tax liabilities arose on April 15, 2014 and 2015, respectively, the dates that the returns were due. *See* §§ 6151(a), 6072(a). If she transferred property after these respective dates, the recipients of the property are potentially liable for income tax for the respective tax years under the principles of transferee liability. The record is unclear as to what assets Sandra owned when the 2013 and 2014 income tax liabilities arose and to whom she transferred them. It is therefore speculative to conclude that there is no transferee other than the Sandra E. Sander Lifetime Trust from whom the IRS can collect the 2013 and 2014 income tax liabilities. We do not imply that such a conclusion would be relevant.

Leda also contends that any payment of the income tax liabilities for 2013 and 2014 will be made from the Sandra E. Sander Lifetime Trust. This contention is based

**[\*16]** We will deny the Motion to Substitute Parties and Change Caption.

II.     *Does the Court have jurisdiction?*

Under Rule 60(a) and (c), when a petition has been filed after the taxpayer is deceased, the petition must have been filed by a fiduciary entitled to bring the case on behalf of the deceased taxpayer. *Fehrs v. Commissioner*, 65 T.C. 346, 349 (1975). Otherwise, we are without jurisdiction. *Id.* at 348. In *Fehrs*, a taxpayer's spouse filed a petition for redetermination on behalf of the deceased taxpayer. We dismissed the petition for lack of jurisdiction, but only after giving the spouse a chance to have a representative appointed for the taxpayer's estate for the purpose of representing the taxpayer. Leda urges the Court to similarly defer ruling on respondent's Motion to Dismiss for Lack of Jurisdiction: "If the Court denies petitioners' Motion to Substitute parties, petitioner requests that the Court allow petitioner time to open a probate proceeding . . . ." We agree that it is appropriate to do so.

We will defer ruling on respondent's Motion to Dismiss for Lack of Jurisdiction for six months in order to allow an opportunity for a probate action to be commenced for Sandra's estate and a personal representative appointed.

To reflect the foregoing,

*An order will be issued denying petitioner's Motion to Substitute Parties and Change Caption and ordering Leda J. Sander to file a status report in six months explaining whether a personal representative has been appointed for the Estate of Sandra E. Sander.*

---

on Leda's testimony that, as trustee of the Sandra E. Sander Lifetime Trust, she will direct the trust to pay any income tax liabilities. Leda may well intend to direct the Sandra E. Sander Lifetime Trust to pay the income tax liabilities. But this unenforceable intention is insufficient to protect the legal rights of other parties. If we were to grant Leda's Motion for Substitution and therefore allow her to litigate the amounts of the income tax liabilities, our decision about the amounts of the income tax liabilities would be binding on any persons against whom the IRS might assert transferee liability. *See Krueger v. Commissioner*, 48 T.C. 824, 829–30 (1967).